UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
GLOBAL AUTO, INC., *et al.*,

                Plaintiffs,

-against-

MICHAEL HITRINOV, a/k/a MICHAEL
KHITRINOV, *et al.*,

                Defendants.
----------------------------------------------------------x
EMPIRE UNITED LINES CO., INC., *et al.*,

                Plaintiffs,

-against-

SK IMPORTS, INC., *et al.*,

                Defendants.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**

13-CV-2479 (SLT)(RER)

14-CV-2566 (SLT)(RER)

**TOWNES, United States District Judge:**

In a memorandum and order entered September 30, 2015 (the "Prior M&O"), the Court dismissed without prejudice the plaintiffs' claims in the first above-captioned action: *Global Auto, Inc. v. Hitrinov*, No. 13-CV-2479 (SLT)(RER) ("*Global Auto*"). *Global Auto, Inc. v. Hitrinov*, No. 13-CV-2479 SLT RER, 2015 WL 5793383, at *6 (E.D.N.Y. Sept. 30, 2015). The Court also denied a motion by the defendants in *Global Auto*—Empire United Lines Co., Inc., and its principal, Michael Hitrinov (collectively, "EUL")—which sought to enjoin the plaintiffs in *Global Auto*—Global Auto, Inc.; G Auto Sales, Inc.; and Effect Auto Sales, Inc. (collectively, "Plaintiffs")—from pursuing cross-claims in a subsequently filed New Jersey action which were almost identical to the claims the Plaintiffs had brought against EUL in Global Auto. *Id.*, at *7-8. EUL now moves for reconsideration of these decisions pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3 of the Local Rules of the United

States District Courts for the Southern and Eastern Districts of New York. For the reasons set forth below, EUL's motion for reconsideration is denied.

## BACKGROUND

The facts relating to this case are set forth in the Prior M&O and other memoranda and orders which the Court has previously entered in the above-captioned cases. Familiarity with those memoranda and orders is assumed. However, for the convenience of the reader, the Court will provide a brief summary.

The two above-captioned actions principally involve disputes between corporations engaged in selling American automobiles to European consumers and Empire United Lines, Co., Inc., a non-vessel operating common carrier which was involved in transporting those automobiles from New Jersey to Finland. After unsuccessfully attempted to intervene in *Global Auto*, some of the European consumers commenced a lawsuit in the United States District Court for the District of New Jersey: *Akishev v. Kapustin*, No. 13-cv-7152-NHL-AMD (*"Akishev"*). The original complaint in that action named 13 defendants (excluding Does), including Plaintiffs, their principals, and related entities (collectively, the "Global Defendants") and EUL and a related entity (collectively, the "EUL Defendants"). After that complaint was amended, the Global Defendants filed an amended answer which incorporated cross-claims against the EUL Defendants which closely resembled the claims contained in Plaintiffs' First Amended Complaint in *Global Auto*.

After the attorneys representing the Plaintiffs in *Global Auto* and the Global Defendants in *Akishev* withdrew as counsel, EUL moved to dismiss the Plaintiffs' claims in *Global Auto* for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Three weeks later—after one of Plaintiffs' principals, Sergey Kapustin, indicated that he might be able to

retain counsel in *Akishev* but would not retain counsel in *Global Auto*— EUL moved to enjoin the Plaintiffs from pursuing the cross-claims in *Akishev*, relying on the "first-filed rule." In the Prior M&O, the Court granted the first motion, but dismissed the Plaintiffs' claims in *Global Auto* without prejudice at the urging of the plaintiffs in *Akishev* (the "NJ Plaintiffs"), noting that "dismissal with prejudice might impede the NJ Plaintiffs' ability to recover on a judgment against Plaintiffs." *Global Auto*, 2015 WL 5793383, at *6. The Court denied the second motion, noting that the "first-filed rule" created only a rebuttable presumption that the district in which the first of two competing lawsuits was filed would be the appropriate venue. The Court noted that, in light of the dismissal of the Plaintiffs' claims in *Global Auto*, it was unclear whether there were two conflicting lawsuits and that EUL had not established that the balance of convenience did not favor New Jersey.

EUL now moves for reconsideration of the Prior M&O. EUL does not contest the decision to dismiss the Plaintiffs' claims in *Global Auto*, but argues that the dismissal should have been with prejudice. EUL also seeks reconsideration of the denial of the motion for injunctive relief, but does not address the issue of whether there are still two competing lawsuits. Rather, EUL contests only the balance of convenience analysis, arguing that the Court improperly placed the burden on EUL to prove that New Jersey was not the more convenient forum and relied on incorrect factual assumptions in performing the balance of convenience analysis. These arguments are described in more detail in the discussion below.

## DISCUSSION

### *Legal Standard*

Although EUL brings this motion pursuant to Fed. R. Civ. P. 59(e) and 60(b) and Local Civil Rule 6.3, the standards under these three rules are the same. *See Maalouf v. Salomon*

*Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2004 WL 2782876, at *1 (S.D.N.Y. Dec. 3, 2004) (citing cases) (standards for granting a motion under Rule 59(e) or a motion for reconsideration under Rule 60(b) are the same); *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, No. 96 Civ. 8243 (RLC), 1998 WL 567900, at *3 (S.D.N.Y. Sept. 3, 1998) ("Grounds for relief under Rule 59(e) are equivalent to the grounds for relief on a motion for reconsideration under Local Civil Rule 6.3."). Under these rules, "[t]he standard for granting ... [reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

The rules do "not provide a party with the opportunity to relitigate the merits of a case in an attempt to win a point already 'carefully analyzed and justifiably disposed.'" *Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 266 (S.D.N.Y. 2011); *see also Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989) ("[A] Rule 60(b)(3) motion cannot ... serve as an attempt to relitigate the merits."). Accordingly, a motion for reconsideration "is properly denied where it seeks only to relitigate issues already decided." *Maldonado v. Local 803 I.B. of T. Health & Welfare Fund*, 490 F. App'x 405, 406 (2d Cir. 2013) (summary order) (citing *Zerman v. Jacobs*, 751 F.2d 82, 85 (2d Cir. 1984)). Moreover, such motions cannot be used to raise new claims or defenses or present new arguments that could have been raised earlier. *See United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977) ("[C]ourts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case."); *Westport Ins. Corp. v. Goldberger & Dubin, P.C.*, 255 F. App'x 593, 595 (2d Cir. 2007) (summary order) ("New

arguments based on hindsight regarding how a movant would have preferred to have argued its case do not provide grounds for Rule 60(b) relief.").

*Dismissal Without Prejudice*

In arguing that the Court erred in dismissing Plaintiffs' claims in *Global Auto* without prejudice, rather than with prejudice, EUL raises both issues of law and fact. With respect to the law, EUL provides the Court with a statistical analysis of reported cases in which claims were dismissed pursuant to Rule 41(b), noting that only 2.4% of those cases in this Circuit, and only 4.15% of such cases nationally, were dismissed without prejudice. Assuming EUL's analysis is correct, it serves only to establish that district courts have the discretion to dismiss without prejudice, even if that discretion is not frequently exercised.

EUL distinguishes the three cases cited by the Court—*Gabayzadeh*, *Berrios*, and *Cheung*—on the ground that the plaintiffs in those cases were incompetent persons, children, or improperly represented parties without standing, not "confirmed members of a massive RICO conspiracy who have repeatedly attempted to defraud the Federal courts." Defendants' Memo at 5. EUL then cites to three other cases—*United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995 (2d Cir. 1995), *Tradeways Inc. v. Chrysler Corp.*, 342 F.2d 350 (2d Cir. 1965), and *Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.*, 393 F.2d 441, 443 (2d Cir. 1968)—in support of the assertion that "in the absence of mitigating factors such as incompetent or minor plaintiffs, the Second Circuit has not shied away from affirming with prejudice dismissals or even reversing lower courts for failing to dismiss with prejudice." Defendants' Memo at 7.

The Court agrees that the cases cited in the Prior M&O were not on point. Rather, they were cited in support of the general proposition that dismissal without prejudice can be appropriate in cases "where dismissal with prejudice 'could potentially prejudice a properly

5

represented party with standing in a subsequent litigation.'" *Global Auto*, 2015 WL 5793383, at *6 (citing *Gabayzadeh*, 2009 WL 2983013, at *4). The three cited cases were similar to this one in two respects: they involved the dismissal of claims brought by *pro se* litigants under Rule 41(b) and involved instances in which dismissal with prejudice would have prejudiced third parties who could not represent themselves in the action.

The cases cited by EUL, however, are also not on point. Indeed, only *Allied Air Freight* is at all relevant to this action. In *Allied Air Freight*, a plaintiff seeking review of an interlocutory order allowed its action to be dismissed for lack of prosecution, knowing that such dismissals, under practices then followed by the United States District Court for the Southern District of New York (the "SDNY"), were typically without prejudice. The plaintiff then appealed the interlocutory order. The defendant argued that considering the merits of that appeal "would encourage all would-be appellants from interlocutory orders to do nothing, procure a dismissal," then appeal to the Second Circuit for review of the interlocutory order. *Allied Air Freight*, 393 F.2d at 444.

The Second Circuit held that it had jurisdiction to hear the appeal and proceeded to reach the merits. However, the Court criticized the SDNY's practice of routinely dismissing without prejudice. In a footnote, the Second Circuit opined: "It may be a better practice for the district court routinely to order that dismissals for failure to prosecute be with prejudice, unless plaintiff makes a showing to the calendar judge that the dismissal should be without prejudice." *Id.*, at 444, n. 2. This dictum did not enunciate a procedural rule which is controlling in this case, and EUL does not cite to any other authority for such a proposition.

The other two cases cited by EUL are entirely irrelevant to this action. In the first case—*United States ex rel. Pilon*—a district court concluded that it lacked subject-matter

represented party with standing in a subsequent litigation.'" *Global Auto*, 2015 WL 5793383, at *6 (citing *Gabayzadeh*, 2009 WL 2983013, at *4). The three cited cases were similar to this one in two respects: they involved the dismissal of claims brought by *pro se* litigants under Rule 41(b) and involved instances in which dismissal with prejudice would have prejudiced third parties who could not represent themselves in the action.

The cases cited by EUL, however, are also not on point. Indeed, only *Allied Air Freight* is at all relevant to this action. In *Allied Air Freight*, a plaintiff seeking review of an interlocutory order allowed its action to be dismissed for lack of prosecution, knowing that such dismissals, under practices then followed by the United States District Court for the Southern District of New York (the "SDNY"), were typically without prejudice. The plaintiff then appealed the interlocutory order. The defendant argued that considering the merits of that appeal "would encourage all would-be appellants from interlocutory orders to do nothing, procure a dismissal," then appeal to the Second Circuit for review of the interlocutory order. *Allied Air Freight*, 393 F.2d at 444.

The Second Circuit held that it had jurisdiction to hear the appeal and proceeded to reach the merits. However, the Court criticized the SDNY's practice of routinely dismissing without prejudice. In a footnote, the Second Circuit opined: "It may be a better practice for the district court routinely to order that dismissals for failure to prosecute be with prejudice, unless plaintiff makes a showing to the calendar judge that the dismissal should be without prejudice." *Id.*, at 444, n. 2. This dictum did not enunciate a procedural rule which is controlling in this case, and EUL does not cite to any other authority for such a proposition.

The other two cases cited by EUL are entirely irrelevant to this action. In the first case—*United States ex rel. Pilon*—a district court concluded that it lacked subject-matter

jurisdiction over the plaintiffs' *qui tam* claims because of the plaintiffs' counsel's failure to comply with filing and service requirements for bringing such claims. The district court nonetheless dismissed the *qui tam* claims without prejudice, then failed to address a motion for reconsideration in which defendant argued that dismissal with prejudice was "the only remedy that properly preserves the congressional objectives embodied in the *qui tam* statutory scheme." *United States ex rel. Pilon*, 60 F.3d at 998. On appeal, the Second Circuit ruled that it was an abuse of discretion not to dismiss the *qui tam* claims with prejudice because "the Pilons' failure to comply with the filing and service provisions ... irreversibly frustrate[d] the congressional goals underlying those provisions." *Id.*, at 1000 (internal citations and quotation omitted; brackets in original). This holding is irrelevant to this case, which does not involve a *qui tam* action.

In the second case—*Tradeways Inc.*—the Second Circuit ruled that it was an abuse of discretion not to dismiss for failure to prosecute an action in which the plaintiff's repeated delays of the litigation prejudiced the defendant. That action had been commenced in 1958, and had been dismissed twice for lack of prosecution during 1960 and 1961. On both occasions, it was restored to the calendar on consent of the defendant. In May 1963, on the eve of trial, the plaintiff sought to stay the trial in order to depose a witness who, although known to the plaintiff for a considerable period of time, was not listed in the pre-trial order. The stay was nevertheless granted and a deposition was taken in mid-June 1963. Although plaintiff was denied permission to extend discovery in early October 1963, plaintiff moved in November 1963 for an order allowing it to continue the deposition. A district judge not only denied that motion, but encouraged the defendant to move to dismiss for failure to prosecute.

Although the defendant made that motion, another judge denied it and scheduled a trial. After that trial, in which a jury awarded the plaintiff $108,000, the defendant appealed the denial of its motion to dismiss. The Second Circuit ruled that it was an abuse of discretion not to grant the motion to dismiss since "[t]he delays appear[ed] to be almost entirely the fault of [the plaintiff]" and "eventually worked to the prejudice of [the defendant]," who lost a valuable witness in an airplane accident in May 1962, three and a half years after the start of the litigation. *Tradeways*, 342 F.2d at 352.

In this case, unlike in *Tradeways*, there is no evidence that EUL would be disadvantaged by dismissal without prejudice. To the contrary, EUL would be unfairly advantaged by dismissal with prejudice. According to a declaration executed by defendant Hitrinov on May 23, 2013 (the "Hitrinov Declaration"), which was filed as Document 14 in *Global Auto*, EUL not only provided shipping and storage services to Plaintiffs, but also helped to finance Plaintiffs' scheme. EUL would take a "60% interest" in particular vehicles (so-called "Investment Vehicles"), and would be paid interest at a rate of 1.5% per month on those investments. Hitrinov Declaration, ¶ 16. The investment was "secured by a 60% interest in the Investment Vehicles." *Id.*, ¶ 18. Kapustin agreed that "that EUL would be entitled to a right of possession in any Investment Vehicle ... until such time as it was released to a third-party buyer" and, to that end, delivered the documents of title for each such vehicle to EUL. Hitrinov Declaration, ¶ 5. However, the Hitrinov Declaration does not state if there was any agreement regarding whether or when EUL could sell the vehicles.

By December 2011, EUL had invested over $450,000 in this manner. However, by late December 2012, Hitrinov began to question Kapustin's integrity. "Concerned about Kapustin's/[P]laintiffs' ability and even willingness to abide by [the] agreement," Hitrinov

8

demanded repayment of the principal and interest within 30 days. *Id.*, ¶¶ 31-32. When Kapustin and the Plaintiffs failed to comply with that demand, Hitrinov directed that Investment Vehicles be "sold to third party buyers to satisfy plaintiffs' indebtedness to EUL." *Id.*, ¶ 40.

It is unclear precisely when EUL sold the cars, how many cars EUL sold, or what the vehicles were worth. In a motion for a temporary restraining order and preliminary injunction filed in early May 2013, the Plaintiffs alleged that EUL was in possession of approximately 58 vehicles belonging to the Plaintiffs, which were specifically identified in Exhibits C-1 and C-3 to the Plaintiffs' Complaint. Those exhibits indicated that the 58 vehicles were valued at over one million dollars. In responding to that motion for injunctive relief, Hitrinov admitted that all but two of the vehicles had been sold, but expressed doubts as to whether the sale would net the $422,018.00 in principal and other amounts that the Plaintiffs allegedly owed EUL. *Id.*, ¶ 41.

At a hearing on June 4, 2013, the Court orally denied the Plaintiffs' motion for injunctive relief on the ground that they had not met the exacting standard for obtaining a mandatory injunction. *See* Transcript of June 4, 2013, Hearing (Document 24 in *Global Auto*). However, the colloquy at that hearing made it clear that there was a substantial question regarding whether EUL was authorized to sell the Investment Vehicles. Neither party could produce a written agreement documenting EUL's rights in the Investment Vehicles, and the Plaintiffs maintained that the vehicles were illegally sold. *Id.*, pp. 4-5.

If the Court were to dismiss the Plaintiffs' claims in *Global Auto* with prejudice, it might foreclose resolution of this substantial question. This result would permit EUL, who helped finance Plaintiffs' scheme, to recoup at least part of its "investment" at the expense of unwitting consumers who were victimized by the Plaintiffs' scheme. This Court will not permit this potential injustice.

EUL's motion for reconsideration also identifies several facts which this Court may have overlooked. In the Prior M&O, the Court noted that the NJ Plaintiffs had filed several motions for sanctions against the Global Defendants, including a motion which sought the entry of a default judgment against them. Although the Prior M&O stated that the motion was still pending, *Global Auto*, 2015 WL 5793383, at *3, that motion was actually decided on September 21, 2015—eight days before the Prior M&O was issued. Judge Hillman, who presides over the *Akishev* case, granted the motion for a default judgment and awarded the NJ Plaintiffs $2,228,069.29. In the wake of Judge Hillman's decision, the NJ Plaintiffs and the Global Defendants entered into an "Assignment of Claims," which purports to assign to the NJ Plaintiffs the Global Defendants' interests in their claims and cross-claims against the EUL and the EUL Defendants. Defendants' Memo, Ex. 3.

The facts do not alter the Court's conclusion that the Plaintiffs' claims in *Global Auto* should be dismissed without prejudice. In the Prior M&O, the Court explained its rationale as follows:

> To the extent that Plaintiff's claims against the EUL Defendants are meritorious, Plaintiffs' creditors may wish to pursue those claims in the event they obtain judgment against Plaintiffs. For that reason, counsel for some of the NJ Plaintiffs have urged the Court to dismiss Plaintiffs' claims against the EUL Defendants without prejudice. Since dismissal with prejudice might impede the NJ Plaintiffs' ability to recover on a judgment against Plaintiffs, the Court will dismiss Plaintiffs' claims in this action without prejudice.

*Global Auto*, 2015 WL 5793383, at *6. The facts that the NJ Plaintiffs have now recovered a substantial judgment against the Global Defendants and have entered into an agreement which purports to assign the Plaintiffs' claims against the EUL Defendants to the NJ Plaintiffs only lends support to the Court's rationale.

Defendants argue that the Plaintiffs' claims in *Global Auto* are non-assignable as a matter of public policy under New Jersey law, that the assignment violates a preliminary injunction entered by Judge Hillman which prevented the Global Defendants from alienating their assets, and is unnecessary because the NJ Plaintiffs have "numerous other methods of enforcing their judgment" against the Global Defendants. Defendants' Memo at 9. None of these arguments are persuasive. First, even assuming that New Jersey law prohibits the assignment of claims, the NJ Plaintiffs, as judgment creditors of the Global Defendants, could attempt to levy upon any recovery that the Global Defendants obtain as a result of their litigation against the EUL Defendants. Second, Judge Hillman's injunction was entered at the request of the NJ Plaintiffs, who sought to prevent the Global Defendants from dissipating their assets. That injunction was not intended to prevent the NJ Plaintiffs from recovering upon their judgment against the Global Defendants, but rather to ensure that the Global Defendants still had assets which the NJ Plaintiffs could recover.

Third, while the NJ Plaintiffs unquestionably have "other methods of enforcing their judgment" against the Global Defendants, Defendants' Memo at 9, there is nothing to suggest that the funds recovered using those methods will satisfy the $2,228,069.28 award. First, that award does not reflect actual damages, but includes substantial punitive damages awarded under the treble damages provisions of the RICO statute and federal odometer laws. There is nothing to suggest that the Global Defendants' scheme netted over $2.2 million. Even if it did, the Global Defendants have a history of secreting their assets. Indeed, on June 18, 2015, Judge Hillman enjoined the Global Defendants from withdrawing money from any bank accounts based on the NJ Plaintiffs' representation that the Global Defendants were diverting funds to a Finnish bank in order to avoid complying with a Consent Order requiring the Global Defendants

to deposit funds into the court's registry. Judge Hillman later accused Mr. Kapustin of perjuring himself and perpetrating a fraud on the court, stating that he had "never seen someone so willing to lie and cheat and steal" as Kapustin. Transcript of Aug. 31, 2015, Proof Hearing, p. 91. In light of this history, the assertion that the NJ Plaintiffs will be able to execute on enough assets to satisfy the multi-million dollar judgment without pursuing the assigned claims is highly speculative.

*The First-Filed Rule*

EUL also moves for reconsideration of the denial of its motion to enjoin the Plaintiffs from pursuing their cross-claims against the EUL Defendants in *Akishev*. EUL does not address the question of whether the first-filed rule, on which their argument relies, even applies in light of the fact that Plaintiffs' claims against EUL in *Global Auto* have been dismissed without prejudice. Rather, EUL's motion focuses entirely on the balance of convenience analysis, noting that the Court incorrectly placed the burden of proof on EUL and that the analysis was factually inaccurate.

Even assuming that EUL's arguments are correct, engaging in the balance of convenience analysis now would be to answer a purely hypothetical question. The "first-filed rule" applies "[w]hen two actions involving the same parties and issues are pending concurrently ...." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001). The rule "seeks to advance judicial economy, protect a plaintiff's choice of forum and avoid duplicative litigation," as well as "the considerable expense and potential for inconsistent judgments that duplicate litigation entails." *Id.* (internal citations omitted).

The very timing of EUL's motion for injunctive relief makes it clear that EUL is not seeking to vindicate these purposes. The Global Defendants' cross-claims against the EUL

Defendants in *Akishev* were filed on October 7, 2014. Yet, EUL did not move for injunctive relief pursuant to the first-filed rule until July 31, 2015—almost 10 months later. By that time, EUL had moved to dismiss Plaintiffs claims in *Global Auto* for failure to prosecute and had learned that Kapustin had located "an attorney ... who showed interest" in representing the Global Defendants in *Akishev*, but had "funds to hire representation for [the] New Jersey case only." Letter to Hon. Sandra L. Townes from Sergey Kapustin, dated July 16, 2015, p. 1.

It is readily apparent from the timing of EUL's motion for injunctive relief that EUL is attempting to use the first-filed rule to prevent adjudication of the merits of the Plaintiffs' claims or cross-claims against EUL and the EUL Defendants. The Second Circuit has repeatedly expressed a "clear preference ... for cases to be adjudicated on the merits." *See, e.g., Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) (citing *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995)). Since the Plaintiffs' claims in *Global Auto* have been dismissed and since Kapustin lacks funds to attempt to resurrect those claims, it is clear that adjudication on the merits will not occur if Plaintiffs are enjoined from pursuing their cross-claims in *Akishev*. It is also clear that the question of whether this forum would be more convenient than the District of New Jersey is now an entirely hypothetical inquiry, in which this Court need not engage. *See E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 46 (2d Cir. 2006) ("The federal judicial power extends only to actual cases and controversies; federal courts are without jurisdiction to decide abstract or hypothetical questions ....")

To the extent that EUL is arguing that Plaintiffs and Kapustin engaged in "forum shopping" by purposely refusing to retain counsel in this action, the Court notes that Plaintiffs and Kapustin have no reason to prefer the New Jersey forum. The New Jersey litigation has not gone at all well for the Global Defendants in general, or for Kapustin in particular. On October

13

29, 2014, after several contempt hearings, Judge Hillman, made a preliminary finding that the Global Defendants committed at least two predicate acts of mail and wire fraud in the furtherance of a RICO enterprise through a pattern of racketeering activity conducted operating their websites (NJ Docket No.110). In addition, as noted above, Judge Hillman has not only accused Mr. Kapustin of perjuring himself and perpetrating a fraud on the court, but has also stated that he has "never seen someone so willing to lie and cheat and steal" as Kapustin. Transcript of Aug. 31, 2015, Proof Hearing, p. 91. There is no reason to believe that Plaintiffs and Kapustin would prefer to continue litigating before Judge Hillman.

## CONCLUSION

For the reasons set forth above, EUL's motion for reconsideration is denied.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: November 13, 2015
Brooklyn, New York