UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GLOBAL AUTO, INC., *ET AL.*,

                    Plaintiffs,

-AGAINST-

MICHAEL HITRINOV, A/K/A MICHAEL KHITRINOV, *ET AL.*,

                      Defendants.

№ 13-CV-2479 (PKC) (RER)

---

EMPIRE UNITED LINES CO., INC., *ET AL.*,

                      Plaintiffs,

-AGAINST-

SK IMPORTS, INC., *ET AL.*,

                      Defendants.

№ 14-CV-2566 (PKC) (RER)

---

**REPORT & RECOMMENDATION**

January 12, 2021

---

**TO THE HONORABLE JUDGE PAMELA K. CHEN**
**UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

      These Motions involve three cases. Two are the above-captioned consolidated cases currently pending in the Eastern District of New York: *Global Auto, Inc. et al v. Hitrinov et al*, No. 13-CV-2479 (PKC) (RER) ("*Global Auto*") and *Empire United Lines Co., Inc. et al v. SK Imports, Inc., et al*, No. 14-CV-2566 (PKC) (RER) ("*Empire United*"). The third is a related case

1

currently pending in the District of New Jersey: *Akishev et al v. Kapustin et al*, N.J. Docket No. 13-CV-7152 (NLH) (AMD) ("*Akishev*" or the "New Jersey Action"). The Plaintiffs in *Akishev* (the "NJ Plaintiffs") are seeking to transfer the claims in these actions to the District of New Jersey or, in the alternative, to intervene in *Global Auto* and *Empire United* to oppose entry of a default judgment.

Global Auto Inc. ("Global Auto"), G Auto Sales, Inc. ("G Auto"), Effect Auto Sales, Inc. ("Effect Auto"), and SK Imports, Inc. ("SK Imports") (collectively, the "Global corporations"), and one of their alleged principals and alter egos, Sergey Kapustin ("Kapustin") (collectively, "Global") were "engaged in selling American automobiles to European consumers." (GA Dkt. No. 109 at 1; EUL Dkt. No. 1 ("EUL Compl.") ¶¶ 6, 43–59).[1] Empire United Lines, Co., Inc. ("EUL") and its principal, Michael Hitrinov ("Hitrinov") (collectively, "Empire") stored and transported those vehicles from the United States to Europe, as well as invested in Global's business. (GA Dkt. No. 38 at 2). The above-captioned consolidated actions—*Global Auto* and *Empire United*—center on disputes between Global and Empire. The NJ Plaintiffs[2] are a group of Global's customers who filed suit against Global and Empire in the New Jersey Action. (*See* DNJ Dkt. No. 27 ("DNJ Am. Compl.")).

On January 29, 2020, Empire filed a motion for default judgment against Global. (GA Dkt. No. 133). While the motion for default judgment was pending, the NJ Plaintiffs filed a self-styled

---

[1] Because citations to three different records is necessary in this Report and Recommendation, I have given each its own designation. Citations to *Global Auto*'s docket will be prefaced with "GA." Citations to *Empire United*'s docket will be prefaced with "EUL." And citations to *Akishev*'s docket will be prefaced with "DNJ."

[2] The NJ Plaintiffs are: Ardak Akishev, Zhandos Aliakparov, Alexey Batalov, Evgeniy Borzenko, Igor Glazunov, Irina Glazunova, Andrey Kirik, Natalia Kirik, Arkadiy Kolbin, Evgeniy Kondratuk, Eduard Lisitsyn, Vladimir Lukyanov, Viktor Maniashin, Mikhail Matveev, Alexander Pukir, Evgeniy Telin, Yuriy Yamkoviy, Alla Yamkovaya, Alexander Zhilinskiy, Elena Zvereva, and Mikhail Zverev. (GA Dkt. No. 146 at 1; DNJ Dkt. No. 27 at 2–3).

motion to transfer or, in the alternative, to intervene and oppose entry of a default judgment. (GA Dkt. No. 146). Your Honor referred these Motions to me for a Report and Recommendation. (GA Order dated 5/26/2020).[3] For these reasons and those stated herein, I respectfully recommend that the NJ Plaintiffs' motions be denied.[4]

## BACKGROUND

The factual and procedural history in these actions and in the related litigation in the District of New Jersey is convoluted. As such, familiarity with the actions is assumed and the following background outlines only the information necessary to understand the Motions at issue.

### I. Factual Background

The Global corporations, which no longer exist, consisted of several related New Jersey corporations and one Pennsylvania corporation that sold vehicles online principally to European consumers. (GA Dkt. No. 47 ("GA Am. Compl.") ¶¶ 5–7; EUL Compl. ¶ 5). Kapustin was the President of Global Auto and allegedly one of the alter egos of the Global corporations. (GA Am. Compl. ¶ 37; EUL Compl. ¶¶ 6, 43–59). EUL is a New York corporation that Global contracted to store and transport its vehicles. (EUL Compl. ¶ 3; GA Am. Compl. ¶ 2). Hitrinov is the President of EUL. (EUL Compl. ¶ 4). EUL allegedly stored Global's vehicles in its warehouse in New Jersey

---

[3] These motions are susceptible to resolution without oral argument. Therefore, the NJ Plaintiffs' request for oral argument is denied.

[4] As discussed further below, the NJ Plaintiffs received a default judgment against Global in the New Jersey Action in the amount of $2,228,069.29. (DNJ Dkt. No. 272). In addition, Global's claims against Empire in *Global Auto* were dismissed without prejudice prior to the NJ Plaintiffs receipt of those claims through the Assignment Agreement, and Global's cross-claims against Empire in the New Jersey Action remain pending. Should Empire's motion for default judgment against Global be granted in these actions, the NJ Plaintiffs may be impacted as competing creditors with Empire, but there does not appear to be any prohibition on them pursuing Global's cross-claims against Empire in the New Jersey Action. As such, it appears the NJ Plaintiffs' true purpose in filing their motion to transfer or to intervene is to preserve Global's assets so that their $2 million judgment in the New Jersey Action can be satisfied to the fullest extent possible. The NJ Plaintiffs' interest as potentially competing creditors with Empire, however, is not this Court's concern.

before transporting them to Finland where a related company would again store them until the vehicles were sold. (GA Am. Compl. ¶¶ 43–44). In addition to storing and transporting Global's vehicles, EUL invested in Global's vehicle inventory. (EUL Compl. ¶ 12).

In exchange for its investment, EUL was to receive, *inter alia*, a share of the profits of the re-sale of the vehicles and a 60% equity interest in the vehicle inventory. (EUL Compl. ¶¶ 12–13). Empire alleges it did not receive its share of the profits for over 500 vehicles sold by Global and that Global failed to pay EUL its storage fees. (EUL Compl. ¶¶ 72–73, 79–83). In addition, Empire alleges that when EUL exercised its right under the investment contract to demand repayment of its investment, Global did not repay the investment in the required timeframe and has since only repaid a small portion of the amount owed. (EUL Compl. ¶¶ 63–65). In response, EUL seized the vehicles in its possession at its warehouses and sold them in partial satisfaction of the debt owed to it by Global. (GA Dkt. No. 51 ("EUL Countercl.") ¶ 28).

After EUL seized the vehicles, Global allegedly created "sham Internet attack websites" designed "to damage [EUL's] and Hitrinov's commercial and personal reputation." (EUL Compl. ¶ 31). Empire alleges "[t]he content of the sham websites created by Global . . . was false, scurrilous, defamatory and misleading" and made "intentionally, maliciously and with the sole purpose of defaming Hitrinov and injuring his and [EUL's] reputation and goodwill." (EUL Compl. ¶ 40). In addition, Empire alleges Global sent letters with similar defamatory statements to at least one company with which Empire had a contractual relationship as well as to other parties. (EUL Compl. ¶¶ 32–35).

The NJ Plaintiffs are customers who attempted to purchase vehicles from Global but after payment, never received their vehicles. (GA Dkt. No. 148 ("NJPs' Mem.") at 1–3). The NJ

4

Plaintiffs allege that Global ran an illegal "bait and switch" fraud scheme and that Empire was a "co-conspirator" in that fraud. (NJPs' Mem. at 3, 16).

## II. Procedural History

On April 24, 2013, Global Auto, G Auto, and Effect Auto filed suit in the Eastern District of New York against, *inter alia*, Empire for contract-related claims, tort claims, and violation of the Racketeer Influenced and Corrupt Organizations Act. (GA Dkt. No. 1). On June 28, 2013, a group of Global's customers, including many of the current intervenors, sought to intervene in *Global Auto* pursuant to Federal Rule of Civil Procedure 24 ("Rule 24"). (GA Dkt. No. 23). On November 7, 2013, the Court denied the customers' motion to intervene. (GA Dkt. No. 38). Shortly thereafter, on November 25, 2013, the customers joined with others, now the NJ Plaintiffs, to file the New Jersey Action against, *inter alia*, Global and Empire.[5] (DNJ Dkt No. 1).

In February and April of 2014, Empire filed counterclaims against Global Auto, G Auto, and Effect Auto in *Global Auto*, (GA Dkt. No. 51), as well as filed its own suit in the Eastern District of New York against, *inter alia*, SK Imports and Kapustin for various contract-related and tort claims. (*See* EUL Compl.). Shortly thereafter, *Empire United* and *Global Auto* were consolidated, and *Global Auto* was designated as the lead case. (GA Order dated 5/19/2014).

### A. The District of New Jersey Action (*Akishev*)

On October 7, 2014, in the New Jersey Action, Global filed crossclaims against, *inter alia*, Empire, alleging essentially the same claims as it alleged in *Global Auto*. (DNJ Dkt. No. 88). On April 27, 2015, the Court in the District of New Jersey granted the NJ Plaintiffs' request that default be entered against Global as sanction for several serious indiscretions. (DNJ Dkt. 189; DNJ

---

[5] The NJ Plaintiffs later voluntarily dismissed their claims against Empire. (DNJ Dkt. No. 293).

Dkt. No. 169-42 at 36). On September 21, 2015, default judgment was entered against Global and in favor of the NJ Plaintiffs in the amount of $2,228,069.29. (DNJ Dkt. No. 272). On October 9, 2015, Global amended its crossclaims against Empire. (DNJ Dkt. No. 274). And on October 12, 2015, Global and the NJ Plaintiffs entered into an agreement (the "Assignment Agreement") wherein Global assigned its claims against Empire in both *Akihev* and *Global Auto* to the NJ Plaintiffs in partial satisfaction of the default judgment against Global. (DNJ Dkt. No. 279-3). The NJ Plaintiffs made a motion to substitute themselves for Global in the New Jersey Action, which was granted on April 27, 2015. (DNJ Dkt. No. 189).

### B. The Eastern District of New York Actions (*Global Auto* and *Empire United*)

In February 2015, Global's attorneys moved to withdraw as counsel in both *Global Auto* and *Empire United*, (GA Dkt. Nos. 73, 74), which the Court granted. (GA Order dated 2/13/2015; GA Minute Order dated 3/5/2015). On September 30, 2015, the Court dismissed without prejudice Global's claims against Empire. (GA Dkt. No. 109 at 16). On October 2, 2015, the Clerk of the Court entered the Global corporations' default in relation to Empire's claims in *Empire United* and counterclaims in *Global Auto*. (GA Dkt. No. 110).

After entry of default against the Global corporations, Empire engaged in settlement negotiations with the remaining parties. (*See* GA Dkt. No. 115). Throughout 2018 and 2019, after agreeing to the principal settlement terms with two of the three remaining parties, Empire worked with those parties to set a reasonable timeline for fulfillment of the settlement terms given those parties' settlement obligations in the New Jersey Action and various other issues that arose. (*See* GA Dkt. Nos. 117, 122, 124, 125, 127). After granting numerous extensions to file stipulations of dismissal, the Court noted no further extensions would be given and if stipulations of dismissal were not filed by December 30, 2019, the case would proceed. (GA Order dated 12/26/2019). After

6

the parties failed to submit stipulations of dismissal by that date, the Court ordered Empire to move for default judgment by January 29, 2020. (GA Order dated 1/23/2020).

On January 29, 2020, Empire filed its motion for default judgment against Global on both its claims in *Empire United* and its counterclaims in *Global Auto*. (GA Dkt. No. 133). In the motion for default judgment, Empire reported a successful settlement with the two remaining parties and requested the Court dismiss those parties with prejudice (GA Dkt. No. 134 at 1), which the Court granted (GA Order dated 1/31/2020). The motion for default judgment also reflected that Empire wished to withdraw two of its causes of action against Global despite suffering harm as a result of the alleged conduct. (GA Dkt. No. 134 at 16).

On February 4, 2020, the NJ Plaintiffs filed a letter motion seeking an extension of time to oppose Empire's current motion for default judgment (GA Dkt. No. 139), which the Court granted (GA Order dated 3/30/2020). After two more extensions, on May 22, 2020, the NJ Plaintiffs filed their motion to transfer or, in the alternative, to intervene to oppose entry of default judgment. (GA Dkt. No. 146).

## DISCUSSION

The NJ Plaintiffs argue this action should be transferred to the District of New Jersey or, in the alternative, the Court should allow them to intervene and oppose entry of default judgment against Global. (NJPs' Mem. at 11–13). However, because they are not yet parties to this action—either as Global's customers[6] or as assignees of Global's claims[7]—they lack standing to move to

---

[6] As noted above, Judge Townes denied the NJ Plaintiffs' previous motion to intervene as Global's customers. (*See* GA Dkt. No. 38).

[7] The NJ Plaintiffs have not sought to substitute in for Global under Federal Rule of Civil Procedure 25 ("Rule 25"). Even if they had done so and been successful, Global's affirmative claims have been dismissed and they have defaulted in defending against EUL's claims. (*See* GA Dkt. No. 109). While the NJ Plaintiffs briefly mention their desire to vacate the four-year-old entry of default against Global, they do not put forth any arguments to support such action

7

transfer at this time. *Phoenix Gen. & Health Servs., Inc. v. Advanced Med. Diagnostic Corp.*, 162 F. Supp. 2d 146, 155 (E.D.N.Y. 2001) (collecting cases). Thus, the NJ Plaintiffs' standing to bring their motion to transfer is dependent upon the outcome of their motion to intervene. *Calderon v. Clearview AI, Inc.*, Nos. 20 Civ. 1296 (CM), 20 Civ. 2222 (CM), 20 Civ. 3053 (CM), 20 Civ. 3104 (CM), 20 Civ. 3481 (CM), and 20 Civ. 3705 (CM), 2020 WL 2792979, at *3 (S.D.N.Y. May 29, 2020) (citing *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009)) ("Before he can seek . . . transfer . . . of the New York Cases, Mutnick must prevail on his motion to intervene."). As such, I will first consider the NJ Plaintiffs' motion to intervene.

### I. Motion to Intervene Pursuant to Rule 24

The NJ Plaintiffs seek intervention to oppose Empire's motion for default judgment against Global as a matter of right pursuant to Rule 24(a) or, in the alternative, that the Court should allow them permissive intervention under Rule 24(b). (NJPs' Mem. at 1, 13). "Courts 'consider substantially the same factors' for permissive intervention under [Rule] 24(b) as they do for intervention of right under [Rule] 24(a)." *Am. Empire Surplus Lines Ins. Co. v. Disano Demolition Co., Inc.*, No. 18-CV-5047 (NGG) (CLP), 2020 WL 7211286, at *4 (E.D.N.Y. Nov. 12, 2020) (quoting *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). Under both rules, "a putative intervenor . . . must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Berroyer v. United States*, 282 F.R.D. 299,

---

other than the general principle that the Second Circuit prefers to resolve issues on the merits. (NJPs' Mem. at 12, n. 4). Given the length of time that has passed, it is unlikely the NJ Plaintiffs would be successful on a motion to vacate even if they had moved to substitute under Rule 25. *See, e.g.*, *Allstate Ins. Co. v. Bogoraz*, No. 10-CV-5286 (SJF) (ETB), 2012 WL 2012 WL 1655552 (E.D.N.Y. May 9, 2012) (denying motion to vacate entry of default despite "the Court['s] interest in resolving cases on their merits" when defendant waited only three months before moving).

302 (E.D.N.Y. 2012) (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001)) (internal quotations omitted). "'Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application.'" *Innovation Ventures LLC v. Pittsburg Wholesale Grocers Inc.*, No. 13-CV-6397 (KAM) (ST), 2019 WL 4805041, at *2 (E.D.N.Y. Sept. 30, 2019) (quoting *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1043 (2d Cir. 1988)) (emphasis in original). Importantly, "the movant bears the burden to demonstrate his right to intervene." *S.E.C. v. CKB168 Holdings Ltd.*, No. 13-CV-5584 (RRM) (RLM), 2014 WL 4904917, at *3 (E.D.N.Y. Sept. 30, 2014).

"Whether intervention is sought as of right or by permission, the application must be timely." *In re Chevron Corp.*, 749 F. Supp. 2d 170, 186 (S.D.N.Y. 2010). "The determination of the timeliness of a motion to intervene is within the discretion of the district court, 'evaluated against the totality of the circumstances before the court.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (quoting *Farmland Dairies*, 847 F.2d at 1043-44). "Among the factors to be taken into account to determine whether a motion to intervene is timely are: (a) the length of time the applicant knew or should have known his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *S.E.C. v. Callahan*, 193 F. Supp. 3d 177, 202 (E.D.N.Y. 2016) (quoting *United States v. State of N.Y.*, 820 F.2d 554, 557 (2d Cir. 1987)) (internal quotations omitted).

Here, the NJ Plaintiffs' Motion is untimely and therefore should be denied. *Innovation Ventures LLC*, 2019 WL 4805041, at *2 (quoting *Farmland Dairies*, 847 F.2d at 1043) ("'an untimely motion to intervene must be denied.'").

### A. The NJ Plaintiffs Knew of Their Purported Interest Over Four Years Before Filing Their Motion to Intervene

"[T]he clock for intervening starts to run from the moment that a proposed intervenor becomes aware or *should have become aware* that he or she had interests in the subject matter of the litigation not otherwise protected by the existing parties to the lawsuit." *Callahan*, 193 F. Supp. 3d at 202 (collecting cases) (emphasis in original). The NJ Plaintiffs argue their motion to intervene is timely because they filed it less than one week after Empire filed its motion for default judgment against Global. (NJPs' Mem. at 13). Aside from being factually incorrect,[8] this argument ignores completely that the NJ Plaintiffs had knowledge of their purported interest in this litigation long before Empire filed its motion for default judgment on January 29, 2020.

The NJ Plaintiffs argue their interest in this litigation is as "assignees of [Global's] claims against [Empire]." (NJPs' Mem. at 13). Indeed, the October 12, 2015 Assignment Agreement itself, which was signed by counsel for the NJ Plainffs, expressly references *Global Auto* and *Empire United*, as well as Judge Townes' September 30, 2015 dismissal of Global's claims in *Global Auto*. (GA Dkt. 152-1 at 1-2). In addition, eleven of the NJ Plaintiffs sought to intervene in *Global Auto* pursuant to Rule 24(a) and (b) as early as June 28, 2013, asserting an interest in that case, albeit without the benefit of the Assignment, which had not yet occurred. (GA Dkt. Nos. 20, 23). Counsel for those same NJ Plaintiffs appeared at a July 29, 2015 hearing before Judge Townes and argued for either a transfer of *Global Auto* to the District of New Jersey or dismissal of Global's claims without prejudice due to the potential impact a dismissal with prejudice would have on the NJ Plaintiffs in *Akishev*. (GA Dkt. No. 109 at 8, 11-12). Accordingly, there can be no question that NJ Plaintiffs knew of their purported interest at the very latest on October 12, 2015,

---

[8] The NJ Plaintiffs did not file their motion within this timeframe but rather sought an extension to file a motion. (*See* GA Dkt. No. 139). And, in fact, they continued to seek extensions until filing their motion on May 22, 2020. (*See* GA Dkt. Nos. 143–144; 146).

10

when they effectuated the Assignment Agreement with Global, four years and seven months before they filed their motion to intervene. (*See* DNJ Dkt. No. 279-3).

The Second Circuit "has in the past affirmed denials of intervention on timeliness grounds after an eight-month delay." *CWCapital Cobalt Vr Ltd. v. U.S. Bank Nat'l Assoc.*, 790 F. App'x 260, 263 (2d Cir. 2019) (citing *Butler, Fitzgerald & Potter*, 250 F.3d at 182) (summary order); *see also Rudolph v. Hudsons Bay Co.*, No. 18 Civ. 8472 (PKC), 2019 WL 1416986, at *2 (S.D.N.Y. Mar. 29, 2019) (denying intervention as untimely after applicants waited "nearly nine months" before moving). A delay of over four years when putative intervenors had actual knowledge of their interest is extremely difficult to overcome. *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 135 (S.D.N.Y. 2016) (quoting *Aristocrat Leisure Ltd. V. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 353 (S.D.N.Y. 2009) ("'In most instances, a motion to intervene based on a claim that was known, but not acted upon, for a period of years would be untimely.'") (collecting cases). Moreover, the NJ Plaintiffs do not give any "explanation to excuse [their] delay in filing, thereby underscoring the untimeliness of the Motion." *Id.* at 135 n.6 (citing *D'Amato*, 236 F.3d at 84). Accordingly, the length of the delay weighs heavily, if not dispositively, against a finding of timeliness.

### B. Empire is Prejudiced by the NJ Plaintiffs' Delay

Prejudice of delayed intervention "'encompasses the basic fairness notion that intervention should not work a last minute disruption of painstaking work by the parties and the court.'" *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 592 (S.D.N.Y. 2018) (quoting *In re Akron Beacon Journal*, No. 94 Civ. 1402 (CSH), 1995 WL 234710, at *7 (S.D.N.Y. Apr. 20, 1995)). Importantly, "'[i]t is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced

11

any of the existing parties.'" *Floyd v. City of New York*, 302 F.R.D. 69, 98 (E.D.N.Y. 2014) (quoting *United States v. Int'l Bus. Machs. Corp.*, 62 F.R.D. 530, 541-42 (S.D.N.Y. 1974)).

The NJ Plaintiffs' intervention after a delay of over four years would certainly prejudice Empire, increasing the cost of litigation through proposed additional discovery and delaying the resolution of its motion for default judgment for an indeterminate period of time. As Empire aptly notes, courts have repeatedly held that last minute intervention of this sort is precisely the type of prejudice that the timeliness requirement seeks to avoid. *E.g., Griffin v. Sheeran,* 767 F. App'x 129, 134 (2d Cir. 2019) (noting that permitting intervention "would prejudice [the non-moving party] because it would lead to the reopening of discovery"); *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 391 (2d Cir. 2006) (postponement of resolution of claims is prejudicial to existing parties); *Schonfeld v. City of New York*, 14 F. App'x 128, 131 (2d Cir. 2001) (intervention at summary judgment is prejudicial to existing parties); *Trustees of Nat'l Ret. Fund v. Fireservice Mgmt. LLC*, 384 F. Supp. 3d 412, 420 (S.D.N.Y. 2019) (intervention at summary judgment stage is prejudicial). The NJ Plaintiffs' attempt to minimize this prejudice by arguing that Empire "did not move to obtain a default judgment for over 5 years . . . and only acted in response to the Court's order, thus effectively abandoning the matter" (NJPs' Mem. at 13), is misplaced. While just over four years elapsed between the Clerk's entry of default and Empire's motion for default judgment (GA Dkt. Nos. 110, 133), not five, it can hardly be said that Empire "effectively abandon[ed] the matter." In the intervening years, Empire was involved in settlement negotiations with other parties that were ultimately successful. (*See* GA Dkt. Nos. 115, 117, 122, 124, 125, 127, Order dated 1/31/2020).

The NJ Plaintiffs' Motion to Intervene is exactly the kind of "last minute disruption" the courts seek to avoid with intervention. After almost seven years of discovery, litigation, working

12

to settle its claims against former parties, narrowing the issues for judgment,[9] and briefing its dispositive motion, the NJ Plaintiffs now seek to intervene on the eve of final judgment. As such, the NJ Plaintiffs' delay in moving for intervention prejudices Empire. *See Penn-Star Ins. Co. v. McElhatton*, 818 F. App'x 67, 71 (2d Cir. 2020) (Putative intervenor "moved to intervene on the eve of settlement, after two years of litigation and negotiation, and [the existing parties] would have been prejudiced by [putative intervenor's] belated intervention on that basis alone.").[10]

Accordingly, the prejudice against Empire weighs heavily in favor of a finding of untimeliness.

### C. **Prejudice to the NJ Plaintiffs is Speculative at Best**

The Court also considers what prejudice the NJ Plaintiffs face should they be denied intervention. The NJ Plaintiffs argue their "interest will be impaired by the disposition of this action because the entry of a default judgment and proposed assessment of damages could have a preclusive effect on their claims pending in the" New Jersey Action. (NJPs' Mem. at 13-14).

However, the NJ Plaintiffs' prejudice is not a foregone conclusion. The Court must still determine Empire's motion for default judgment on both liability and damages. It is not yet known whether the Court will grant Empire's motion for default judgment and if so, to what extent it will

---

[9] Empire noted in its Motion for Default Judgment that it no longer was pursuing two of its causes of action against Global despite suffering harm as a result of the alleged conduct. (GA Dkt. No. 134 at 16).

[10] The NJ Plaintiffs' delay also prejudices Empire as it unjustifiably prevents Empire from pursuing default judgment on its libel claim. The assignment of Global's claims to the NJ Plaintiffs has no bearing on Empire's libel cause of action. In fact, the NJ Plaintiffs admit as much in their memorandum, noting that the libel "cause of action does not concern nor overlaps facts common [sic] to NJ Plaintiffs' claims assigned against [Empire]." (NJPs' Mem. at 21). Accordingly, the NJ Plaintiffs' attempt to oppose default judgment on Empire's libel cause of action is unwarranted and Empire is entitled to move for default judgment on that claim. That the NJ Plaintiffs admit they have no interest in opposing the libel cause of action but then go on to make substantive arguments as to why Empire should not receive damages for the claim further reveals their true motives in filing these motions. (*Id*. at 21-22). As mentioned above, the NJ Plaintiffs appear to be motivated by the desire to preserve any assets that Global has so that their judgment will be satisfied to the fullest extent possible.

award damages. Even if the Court were to grant Empire's motion for default judgment, it is unclear whether the court in the New Jersey Action would afford the default judgment preclusive effect. *See In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019) (The "requirement that the underlying issue be 'actually litigated' generally bars a court from giving a default judgment preclusive effect.").

Assuming, *arguendo*, that this Court grants Empire's motion for default judgment in full and the court in the New Jersey Action gave the default judgment preclusive effect, the NJ Plaintiffs' prejudice is still not enough to outweigh the prejudice to Empire. "[A]n applicant for intervention cannot rely on prejudice that would result from being unable to intervene if the prejudice would 'be attributed to [his] own failure to seek intervention when [he] first had reason to become aware that [the matter] would be considered by the court." *Ricci v. DeStefano*, Civil No. 3:04-CV-1109 (JBA), 2010 WL 9113871, at *6 (D. Conn. May 12, 2010) (quoting *United States v. Yonkers Bd. Of Educ.*, 801 F.2d 593, 595 (2d Cir. 1986)) (alterations in original). The NJ Plaintiffs "had the opportunity to avoid this outcome and failed to do so." *Penn-Star Ins. Co. v. Maint. Asset Mgmt. Inc.*, No. 17-CV-5047 (NGG) (ST), 2019 WL 4667714, at *6 (E.D.N.Y. Sept. 25, 2019). Thus, it is possible the NJ Plaintiffs may be prejudiced if denied intervention, but "the weight of the prejudice is lessened by [their] failure to take affirmative steps to protect [their] own interests." *Id.*

### D. Unusual Circumstances

The NJ Plaintiffs do not cite to any unusual circumstances that should be considered in the timeliness determination.

\* \* \*

In light of the significant length of the NJ Plaintiffs' delay in seeking to intervene, their failure to offer any reasonable explanation for that delay, the significant prejudice to Empire, and the speculative nature of prejudice, if any, to the NJ Plaintiffs, "intervention on the part of late-arrivers must yield" to Empire's desire for finality. *Farmland Dairies*, 847 F.2d at 1044–45 (internal quotation marks omitted). I therefore respectfully recommend that the Court deny the NJ Plaintiffs' motion to intervene under both Rule 24(a) and Rule 24(b) as untimely.[11] *See Ricci*, 2010 WL 9113871, at \*3 (quoting *MasterCard Int'l Inc.*, 471 F.3d at 391) ("[W]here a district court 'could properly find an applicant's motion to intervene untimely' under Rule 24(a), there is 'no abuse of discretion in the district court's decision denying the applicant permissive intervention under Rule 24(b).'") (collecting cases).

## II. Motion to Transfer

The NJ Plaintiffs request that Empire's counterclaims against Global be transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). (GA Dkt. No. 148 at 18). As mentioned above, a non-party lacks standing to move for transfer under Section 1404(a). *Phoenix Gen. & Health Services, Inc.*, 162 F. Supp. 2d at 155 (collecting cases); *see also* WRIGHT, MILLER & COOPER, 15 FED. PRAC. & PROC. JURIS. § 3844 (4th ed.) ("A nonparty to the case, however, cannot seek to have an action transferred under Section 1404(a)."). Because, as determined above, the NJ Plaintiffs' motion to intervene is untimely, they lack standing to seek to transfer these actions to

---

[11] As such, I do not consider the remaining factors of the intervention test. *Callahan*, 2 F. Supp. 3d at 438–39.

the District of New Jersey. Accordingly, I respectfully recommend the Court deny the NJ Plaintiffs' motion to transfer.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the NJ Plaintiffs' motion to intervene be denied as untimely and their motion to transfer be denied for lack of standing. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Pamela K. Chen within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED


**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: January 12, 2021
Brooklyn, NY